■ PAULINE FREEDMAN, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 40108.) — STALEY, JR., J. Appeals by the State of New York and by claimant from the judgment of the Court of Claims entered in the Office of the Clerk of the Court of Claims on the 14th day of July, 1965, which awarded claimant the sum of $86,365 plus interest. The State of New York, by maps filed in the Albany County Clerk's Office on February 14, 1961, August 27, 1961 and August 31, 1961, appropriated 4.468 acres of claimant's land in fee together with .209 acre in permanent easements, and .983 acre in temporary easements for the construction of the Albany-Crosstown Arterial in the City of Albany. At the time of these appropriations, the claimant was the owner of approximately 34.96 acres of land in the southwesterly portion of the City of Albany, of which 10.33 acres were in proposed streets. The property consisted of vacant land partly on dedicated streets, partly on partially developed streets, and the bulk of the property on paper streets. The area was zoned residential A and B by the City of Albany, and a residential subdivision map had been filed in the Albany County Clerk's Office in·1927. Only a relatively small amount of development work had been accomplished at the time of the appropriation. By reason of the appropriation, the claimant's property was divided into two parcels, one consisting of 12.879 acres of land on the easterly side of the arterial and the other consisting of 15.5 acres on the westerly side of the arterial. The land subject to development lay adjacent to a desirable residential area in the City of Albany, and was in the path of natural expansion to the east. The property was in a neighborhood of economic rise where good streets existed and community services were available. It would have developed in character with contiguous properties had it not been for the construction of the arterial. The trial court determined the before value to be $242,480, and the after value as $157,371. The direct and consequential damages were found as follows: "*Direct Damages* Fee plus permanent easement takings 5.079 acres at $6,500 per acre $33,013; *Consequential Damages* 15.5 Acres at $6,500 20% damage $20,150; 12.879 Acres at $6,500 35% damage $29,300; 168 Ft. at $45 per Ft. 35% damage $2,646; Total consequential damages $52,096; Total permanent damages $85,109; *Temporary Easements* $1,256; Award $86,365". Claimant's expert, Bruno, using a development cost approach, estimated the before value at $387,530.81, the after value at $142,809.77, and resulting damage at $244,721.04. In a similar manner, claimant's other expert, MacKay, estimated before value at $398,816.80, after value at $147,621.40, and

total damage at $251,195.40. The State's expert, McGuire, also used a lot development approach to reach a before value of $142,528.18, the after value at $110,001.50, and resulting damage at $32,526.68. He divided this total before value by 24.63, the number of acres he allocated to lot development (it excluded street areas), to arrive at a value of $5,786.77 per acre. The court held that claimant's experts used an incorrect method of appraisal for the bulk of the property and that the correct approach is on an acreage basis as part of a potential residential subdivision with an increment in value because of that potentiality of use. The State and apparently the claimant do not contest the before value of $242,480, nor the unit value of $6,500 per acre, or the front foot value of $45 for the land valued as frontage. Both parties also apparently accept the trial court's allowance of $1,256 for temporary easements. The State also accepts the 35% consequential damages for the easterly parcel and the use of a percentage of 35% for the consequential damages to the frontage. The State contends, however, that the court erroneously allowed consequential damages to the remaining westerly 15.5 acres on the basis of elimination of access from the east, thereby causing the award to be excessive in the sum of $28,995.75. The claimant contends that the award is insufficient and that the trial court should have found 50% consequential damages for the easterly parcel and 35% consequential damages for the westerly parcel. The State contends that the trial court considered the westerly 15.5 acres as consequentially damaged to the extent of 20%, solely by reason of the elimination of access from the east. The decision of the trial court considered the change in access but, in addition, also considered the proximity of the parcel to the arterial and the adverse effects of a permanent easement as well as the separation of this parcel from the more desirable residential developments in the area to the east, all of which contributed to the diminution in value of the parcel. The award of 35% consequential damages to the remaining part of the easterly parcel and 20% to the westerly parcel is within the range of testimony and will not be disturbed. The trial court having viewed the taking, the finding, based on personal observation and on the evidence, that the easterly parcel by reason of its proximity to a residential area already developed, was damaged consequentially to a greater extent than the westerly parcel was justified. The decision of the trial court specifically states that "the appropriation damaged 168 feet of frontage by 35%." The court's computation indicates an allowance of $2,646 for the consequential damage to 168 feet of frontage. The propriety of this allowance is warranted by the evidence as to Lot 13 in Block I and Lot 1 in Block J. The testimony of claimant's expert, MacKay (contained in claimant's Exhibit 14), indicates that Lot 1 in Block J was damaged by the taking and this is supported by the map exhibits which indicate that this lot is within approximately 58 feet of the actual taking. The contention of the State that the trial court erroneously allowed damages for 573 feet of frontage is, therefore, without merit. Judgment affirmed, with costs. Gibson, P. J., Herlihy and Reynolds, JJ., concur with Staley, Jr., J.; Taylor, J., not voting.